In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00081-CR


______________________________




TIMOTHY WAYNE RYAN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 276th Judicial District Court


Titus County, Texas


Trial Court No. CR15,114




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 After drinking heavily all day July 4, 2006, Timothy Wayne Ryan stabbed his father, leaving
him bleeding and on the kitchen floor. Ryan also ran over his mother with his father's pick-up truck,
killing her. Ryan said he could not remember attacking his parents, nor could he explain his actions
other than to say a couple weeks earlier his mother had said something that hurt him. 

 Ryan pled guilty to murdering his mother--trial court case number 15,114 and this
appeal--and aggravated assault on his father with a deadly weapon--trial court case number 15,115
and the companion appeal, our cause number 06-07-00082-CR--then asked the Titus County jury
to place him on community supervision in each case. (1) Instead, the jury assessed ninety-nine years'
imprisonment and a fine of $10,000.00 in each case. We affirm the judgment of the trial court in this
case, after determining the trial court committed no error in orally explaining to the jury how to fill
out the verdict form. 

 Ryan complains about the trial court's statements to the jury shortly before they returned
their verdict. Late in jury deliberations, (2) the presiding juror told the trial court, in open court, that
the jury had reached verdicts in each of the two cases. The trial judge said he had been "advised that
you had indicated you were having some difficulty being able to - - "; and the presiding juror finished
his sentence, "[f]ill in the paperwork." Ryan claims that the trial court's subsequent oral statements
comprised a "supplemental instruction [which] essentially tells the jury to ignore those elements of
the written charge that define and discuss probation. The instruction amounts to a comment on the
weight of the evidence and conveys to the jury the trial court's feelings on punishment." We
disagree, and affirm the trial court's judgment. (3)

 During, but near the end of jury deliberations, the jury appeared before the trial court, and
the above-quoted exchange occurred. The record is silent as to what or who "advised" the trial court
that the jury was having some trouble "[f]ill[ing] in the paperwork." Though the presiding juror told
the trial court the jury had reached verdicts on both cases, the trial court asked if they were still
having difficulty with the "paperwork," and the presiding juror answered, "Yes." At this point, the
trial court addressed the presiding juror in very explicit, and from our reading, clear statements. The
court advised the juror not to speak to the court unless asked; to answer the court in only "yes or no"
answers; and that whatever the judge said, he was "not trying to indicate any personal thought or
opinions about what your verdict ought to be in one direction or the other." The trial court explained
that each "certificate of verdict" had "two forms," where the "upper form is to be used if the jury does
not wish to recommend probation." Conversely, should the jury wish to recommend community
supervision, the trial court said the jury would use "the bottom blank. And that blank, under the
instructions of the Court, would have to be filled in for the confinement at any number of five or ten
or any number in between. If it's over ten, you cannot recommend probation." The court then sent
the jury back to make sure their verdicts accurately stated what the jury wished to recommend.

 We fail to see how any of this amounts to a comment on the weight of the evidence as Ryan
asserts. It is true that, when a trial court responds substantively to a jury question during
deliberations, that communication essentially amounts to an additional or supplemental jury
instruction. Daniell v. State, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993); Villarreal v. State, 205
S.W.3d 103, 106 (Tex. App.--Texarkana 2006, pet. dism'd, untimely filed). In this case however,
the trial court's statements reflect accurate statements of the law, were clearly directed at helping the
jury fill out the forms consistent with whatever verdict it had reached, and were carefully measured
to disavow any intent to color the jury's thinking on those verdicts.

 Reviewing the totality of the record, we find no error in the trial court's statements to the jury.

 As there was no error in the trial court's explanation of the verdict forms, we do not reach the
egregious harm analysis of Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on
reh'g). See Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Duke v. State, 950 S.W.2d
424, 426 (Tex. App.--Houston [1st Dist.] 1997, pet. ref'd).





 We affirm the trial court's judgment.




 Josh R. Morriss, III

 Chief Justice


Date Submitted: November 1, 2007

Date Decided: November 21, 2007


Do Not Publish
1. The trial court often used the commonly used term "probation" in lieu of the current,
statutory "community supervision." We use the two terms interchangeably in this opinion. 
2. And after the jury had sent two notes, both answered by the trial court without objection
from the State or Ryan; these notes are not the subject of the instant appeal. 
3. In a separate opinion issued contemporaneously with this opinion, we also affirm the
companion appeal, our cause number 06-07-00082-CR.



imate cause element has two components: cause-in-fact and foreseeability. See Marathon
Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003). The test for cause-in-fact, or "but-for"
causation, is whether (1) the act or omission was a substantial factor in causing the injury and
(2) without the act or omission, the harm would not have occurred. Id. 

 Derouen attached several exhibits to her response to Wal-Mart's motion for summary
judgment. These exhibits included copies of treatment notes from her treating doctors; excerpts from
depositions of Derouen and her husband, which described the circumstances surrounding her fall in
the Wal-Mart store and which detailed the pain Derouen has continued to experience; and a copy of
Derouen's handwritten notes describing the accident. 

 After reviewing these documents, we find nothing which suggests that Wal-Mart was
responsible for any condition causing Derouen's fall. That is to say, the record is devoid of any
evidence suggesting an act or omission on the part of Wal-Mart which was a substantial factor in
causing Derouen's injury. See id. Absent at least a scintilla of such evidence, Derouen could not
meet the required showings for proximate cause. The trial court correctly granted Wal-Mart's motion
for no evidence summary judgment. 

 We affirm the judgment of the trial court. 



 Bailey C. Moseley

 Justice


Date Submitted: January 24, 2007

Date Decided: January 26, 2007

1. The trial court's order stated that there had been adequate time for discovery; the case had
twice been put on the dismissal docket for want of prosecution, and on both occasions was returned
to the trial docket at Derouen's request.